UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x
                                    :
CLARENCE LOWE,
                                    :
               Plaintiff,
                                    :        **MEMORANDUM DECISION**
          - against -
                                    :        04 Civ. 9012 (DC)
JO ANNE BARNHART, Commissioner of
Social Security,                    :

               Defendant.           :

- - - - - - - - - - - - - - - - - -x

**APPEARANCES:**    CLARENCE LOWE
                    Plaintiff <u>Pro</u> <u>Se</u>
                    2680 Frederick Douglass Boulevard, Apt. 17B
                    New York, New York  10030

                    MICHAEL J. GARCIA, ESQ.
                    United States Attorney for the
                         Southern District of New York
                         By:  Susan D. Baird
                              Assistant United States Attorney
                    86 Chambers Street, 3rd Floor
                    New York, New York  10007

**CHIN, D.J.**

          <u>Pro</u> <u>se</u> plaintiff Clarence Lowe brings this action

pursuant to 42 U.S.C. § 405(g), challenging the final

determination of defendant Commissioner of the Social Security

Administration (the "Commissioner" and the "SSA," respectively)

that Lowe was not entitled to Supplemental Security Income

("SSI") benefits under the Social Security Act (the "Act").  The

Commissioner moves for judgment on the pleadings pursuant to

Federal Rule of Civil Procedure 12(c), requesting that the Court

affirm her decision.  For the reasons set forth below, the motion

is granted, the determination denying benefits is affirmed, and

the complaint is dismissed.

## BACKGROUND

### A.  Prior Proceedings

Lowe filed a Title II application for disability insurance benefits and SSI benefits on January 22, 2002, alleging that he became disabled on July 1, 1997.  (Tr. 85-87).[1]  He claimed he was unable to work due to a heart condition, pain and swelling in both legs, and high blood pressure.  (Id. at 89). The SSA denied this application on April 26, 2002.  (Id. at 60-63).  Lowe appealed and requested a hearing before an administrative law judge ("ALJ") on May 6, 2002.  (Id. at 64-65).

The ALJ, Lawrence Dashefsky, considered the issue de novo in a hearing on March 6, 2003.  (Id. at 28-39).  Plaintiff appeared without counsel and testified.  (Id.).  At the hearing, Lowe withdrew his application for disability insurance benefits, proceeding only on his application for SSI benefits.  (Id. at 28, 77).  In a decision issued May 8, 2003, the ALJ found that Lowe was not disabled within the meaning of the Act and denied his claim for SSI benefits.  (Id. at 77-81).

After Lowe appealed, the SSA Appeals Council remanded the case to the ALJ for further findings on Lowe's decision to withdraw his disability benefits application and his ability to return to his past relevant work.  (Id. at 73, 82-84).  A new hearing was held before ALJ Mark Sochaczewsky on October 2, 2003. (Id. at 42-52).  Lowe appeared without counsel and testified.

_____

[1]    Page citations to "Tr." refer to the transcript of the administrative record.

(Id.).  On December 17, 2003, the ALJ issued a de novo decision denying Lowe's application.  (Id. at 17-25).  The second ALJ's decision became the final determination of the Commissioner when the Appeals Council denied Lowe's request for review on August 6, 2004.  (Id. at 4-6).[2]

Lowe filed the instant action on November 16, 2004, claiming a continued disability that began in July 1997, as a result of high blood pressure; abnormal heartbeat; shortness of breath; pain and swelling in both legs; pain in both hips; limited movement and swelling in the left leg, left knee, and right leg; and an inability to climb stairs or walk moderate distances.  (Compl. ¶¶ 4, 5, & Attach.).  He seeks an award of SSI benefits under the Act, or, in the alternative, remand to the Commissioner for reconsideration.  (Id. ¶ 9(c)).

The Court had issued an order on December 6, 2005, directing defendant to move for judgment on the pleadings by January 6, 2006, and gave Lowe until February 6, 2006, to respond.  On January 12, 2006, the Commissioner moved for judgment on the pleadings.  Lowe did not file a response, but in a letter dated March 16, 2006, he inquired about the status of his case.  On March 23, 2006, the Court issued an order directing Lowe to respond to defendant's motion by April 13, 2006.  Lowe

_____

[2]     In a separate order also issued on August 6, 2004, the Appeals Council dismissed a request made by Lowe on May 6, 2002, for a hearing on an earlier disability insurance benefits claim. (Tr. 8-10).  The Council found that a different ALJ had made a final determination on July 27, 1998, based on the same facts pertinent to the same issue, and that no basis for reopening the decision existed.  (Id.).  See 20 C.F.R. 404.957(c)(1).

-3-

again failed to file a response, and therefore I consider defendant's motion with no input from plaintiff apart from his complaint.

**B.   Evidence**

   **1.   Plaintiff's Age, Education, and Experience**

Lowe was born on May 22, 1947, and was fifty-six years old at the time of the ALJ decision of December 17, 2003.  (Tr. at 21, 85).  He has a high school education and has completed one year of college.  (Id. at 31, 44).  At the time of his hearings, Lowe was divorced and living alone.  (Id. at 30, 44).  He reported that he was able to bathe and dress himself, prepare meals for himself, clean his apartment, and take his medication without assistance.  (Id. at 113-15).  Lowe stated that he went outside every day, and was able to walk and use public transportation.  (Id. at 115).

Lowe worked as a bookkeeper at Chemical Bank from June 1968 through April 1991, and at Bulova Watches from March 1994 until October 1994.  (Id. at 104-06, 183).  While at Chemical Bank, Lowe was responsible for reconciling accounts, reconciling bank statements with listings, and processing and correcting checks.  (Id. at 104-05, 183).  At Bulova Watches, his duties included account bookkeeping, receiving cash, and cashing and printing checks.  (Id. at 104, 106, 183).  These jobs primarily involved sitting, but Lowe would carry boxes of checks weighing between five and ten pounds in the course of his employment.  (Id. at 32, 45, 90).  Lowe was laid off when Bulova Watches

merged with another company, and has not sought work since.  (Id. at 32, 37, 45, 89).

## 2. __Medical Evidence__

### a. __Dr. Babu Joseph__

At the request of the Commissioner, Lowe was evaluated by Dr. Babu Joseph, an internist, on March 6, 2002.  (Id. at 156-59).[3]  Lowe reported a seven-year history of heart disease and hypertension, and stated that he had been diagnosed at Harlem Hospital in 1995 with cardiac arrhythmias.  (Id. at 156).  He said that he experienced erratic chest pains two to three times each week, associated with shortness of breath and diaphoresis, and relieved these symptoms with aspirin.  (Id.).  Lowe also claimed to have shortness of breath after walking four to five blocks.  (Id.).

Dr. Joseph noted that Lowe was diagnosed with myocardial infarction in February 2001, found to have an abnormal echocardiogram ("EKG"), and underwent cardiac catheterization on February 26, 2001.  (Id.).  He also noted that Lowe had a medical history of cardiac arrhythmias and seizures, for which he had received treatment at various hospitals since 1993.  (Id.).  Lowe was taking hydrochlorothiazide, enalapril, and aspirin.  (Id.).  Dr. Joseph reported that Lowe's heart rate was normal.  (Id. at 157).  Lowe's S1 and S2 sounds were within normal limits, and

_____
[3]     The record does not contain any information from a treating physician seen regularly by Lowe.  It appears that during the time period reflected in the record, Lowe did not have a treating physician, but would instead visit hospitals and clinics on an as-needed basis.

-5-

there were no S3 or S4 sounds.  (Id.).  There were no systolic or diastolic murmurs, and no friction rubs were heard.  (Id.).

Dr. Joseph's impression of plaintiff was that he had a history of coronary artery disease status post myocardial infarction, a history of cardiac arrhythmias of unknown etiology, and hypertension.  (Id. at 158).  Dr. Joseph's medical assessment was that Lowe's ability to walk, lift, carry, push, or pull was moderately restricted due to his history of coronary artery disease and cardiac arrhythmias, and that there was no limitation on Lowe's ability to stand or sit.  (Id.).  Dr. Joseph's prognosis was "guarded," and he recommended regular follow-up with a doctor.  (Id.).

### b.  Dr. D. Ingram

Lowe was examined on April 17, 2001, by Dr. D. Ingram, a consultative state agency doctor.  (Id. at 161-67).  Dr. Ingram found that Lowe was mildly to moderately limited by his heart condition, but was able to stand at least two hours a day, sit about six hours a day, and frequently lift ten pounds.  (Id. at 162).  Dr. Ingram concluded from the physical exam that Lowe's symptoms were disproportionate to "the expected severity of the claimants mediclly [sic] determinable impairment."  (Id. at 166).  He further found that Lowe retained the ability to engage in substantial gainful activity.  (Id.).

### c. **Emergency Room Treatments**

#### i. **Harlem Hospital**

Plaintiff was treated at Harlem Hospital from November 26, 1997, through December 1, 1997, after recording an abnormal EKG and reporting chest pressure during a pre-employment physical examination at a clinic. (Id. at 146-54). He had a medical history of chronic alcoholism, alcohol-related seizures, hypertension, tuberculosis, meningitis, venous insufficiency, ankle and abdominal surgery, and sporadic chest pain. (Id. at 146, 149, 151, 153-54). Lowe's physical examination was unremarkable, and his chest was clear with normal S1 and S2 sounds. (Id. at 146, 148-54). An EKG was performed, indicating sinus tachycardia with non-specific T wave changes and Q wave in leads I and II. (Id. at 146, 154). A consulting cardiologist, Dr. Abogunde Geer, noted that Lowe's chest pain was atypical and unlikely to stem from coronary artery disease, and recommended a routine stress test and dietary advice. (Id. at 154). Lowe reported that he was able to walk about twenty blocks three times each week. (Id.).

On September 25, 2000, an EKG was performed at Harlem Hospital. (Id. at 145). It showed a normal sinus rhythm, early transition, and no significant change since the prior tracing on May 27, 1998. (Id.).

An EKG was performed at Harlem Hospital on December 28, 2001, and revealed sinus tachycardia. (Id. at 155). Since the previous EKG on September 25, 2000, inferior Q waves were seen,

revealing a possible inferior infarction.  (Id.).  The EKG was
categorized "borderline."  (Id.).

### ii.  Mount Sinai Hospital

Lowe underwent a cardiac catheterization at Mount Sinai
Hospital on February 26, 2001.  (Id. at 176).  The procedure
indicated normal left ventricle functioning and normal coronary
arteries.  (Id.).

### d.  Other Treatments

### i.  Harlem Hospital Medical Clinic

Lowe was examined during a routine checkup at Harlem
Hospital Medical Clinic on October 5, 2001, by Janar Gibson, a
physician's assistant.  (Id. at 143-44).  Lowe had no complaints
and did not report any changes since his previous visit.  (Id. at
143).  He had no blurred vision or shortness of breath, and his
head, eyes, ears, nose, and throat were unremarkable.  (Id.).
Lowe reported that he was taking his medicines and was continued
on enalapril, aspirin, and hydrochlorothiazide.  (Id.).

Gibson's determination was status post myocardial
infarction and essential hypertension, controlled.  (Id.).  Dr.
Dean Miller was present during the examination, and agreed with
this assessment.  (Id. at 144).  Dr. Miller added that
tachycardia should be noted.  (Id.).  He also observed that Lowe
was likely manifesting signs of alcohol withdrawal, as he had in
earlier visits, and that Lowe admitted he "is a drinker."  (Id.).

### ii. **HS Systems**

HS Systems ("HSS") developed a rehabilitation plan for Lowe to start on June 5, 2002, and continue through September 12, 2002. (<u>Id.</u> at 180). The purpose of the plan was to stabilize and treat Lowe's cardiovascular disease, decrease complications from risk factors, decrease the risk for neurovascular compromise, and obtain nutritional counseling. (<u>Id.</u>). It is unclear from the record whether Lowe completed this plan, but another plan was created with the same objectives scheduled to begin on December 15, 2002. (<u>Id.</u> at 181). HSS recommended a two-month extension of that plan on April 16, 2003, because Lowe's treating physician reported that although Lowe had been compliant with his plan, his conditions had not significantly improved. (<u>Id.</u> at 185). On July 11, 2003, HSS wrote to plaintiff, informing him that he had "successfully met the goals of [his] plan," but his physician again reported that his conditions had not significantly improved. (<u>Id.</u> at 186).

### 3. **Non-Medical Evidence**

#### a. **Plaintiff's Testimony**

##### i. **March 6, 2003, Hearing**

Lowe testified at the March 6, 2003, administrative hearing. (<u>Id.</u> at 28-39). He testified that he was unable to work due to swelling in his legs and difficulty breathing. (<u>Id.</u> at 32). He also stated that he had trouble transporting himself. (<u>Id.</u> at 36). Lowe testified that he visited a doctor every three

-9-

months.  (Id. at 33).[4]  Lowe also stated that he took medication to relieve his breathing problems, with some success, and that he took aspirin for high blood pressure, which controlled that condition.  (Id. at 34).  He reported that he suffered dizziness for a few seconds after taking his medication in the morning. (Id. at 34-35).

Lowe testified that he did not socialize with friends or family, but attended church once a week.  (Id. at 35).  His daily activities included reading, watching television, cooking, shopping, and doing housework.  (Id.).

Lowe testified that he was able to sit without difficulty and could carry five to ten pounds.  (Id. at 36).  He testified that he could stand for "a couple hours."  (Id.).  Lowe stated that he was able to walk two or three blocks before needing to stop because of shortness of breath and fatigue in his legs.  (Id.).  The ALJ asked Lowe why he was unable to work as a bookkeeper, given his ability to sit and lift light weights. (Id.).  Lowe responded that he had trouble traveling anywhere, and that he had been instructed not to seek work by HSS.  (Id. at 36-37).

## ii.  October 2, 2003, Hearing

Lowe also testified at the second hearing on October 2, 2003.  (Id. at 42-52).  He testified that he was unable to work because of swollen legs, poor circulation, breathing problems,

_____

[4]     The record contains no evidence, apart from Lowe's testimony, that he visited a doctor regularly, and no further documentation was submitted to support his statement.

high blood pressure, and a heart condition. (<u>Id.</u> at 45). Lowe also stated that since the previous hearing he had been diagnosed with arthritis in his legs and left hip, was receiving therapy, and had been prescribed a cane for "long walks." (<u>Id.</u> at 46-48). Additionally, he testified that he had gone to the hospital for shortness of breath and chest pains the day before the hearing, but no diagnosis was made. (<u>Id.</u> at 46-47). Lowe testified that his daily activities remained unchanged, but that he attended church less frequently than he had reported during the previous testimony. (<u>Id.</u> at 48). He testified that he could stand about one hour, had no problem sitting, and could lift between five and ten pounds. (<u>Id.</u> at 50).

**DISCUSSION**

**A.   Applicable Law**

**  1.   Standard of Review**

A court may set aside the Commissioner's decision to deny SSI benefits only when it is based on legal error or is not supported by substantial evidence. <u>Balsamo v. Chater</u>, 142 F.3d 75, 79 (2d Cir. 1998). Substantial evidence means "more than a mere scintilla" -- it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Quinones v. Chater</u>, 117 F.3d 29, 33 (2d Cir. 1997) (internal quotations and citations omitted). A district court's review of the Commissioner's determination is therefore limited to "whether the Commissioner applied the proper legal standards,

whether its factual findings were supported by substantial
evidence, and whether [she] provided a full and fair hearing."
<u>Saul v. Apfel</u>, No. 97 Civ. 1616 (DC), 1998 WL 329275, at *3
(S.D.N.Y. June 22, 1998).

The Commissioner's decision is to be afforded
considerable deference; the reviewing court should not
"substitute its own judgment for that of the [Commissioner], even
if it might justifiably have reached a different result upon a <u>de</u>
<u>novo</u> review." <u>Jones v. Sullivan</u>, 949 F.2d 57, 59 (2d Cir. 1991)
(quoting <u>Valente v. Sec'y of Health & Human Servs.</u>, 733 F.2d
1037, 1041 (2d Cir. 1984)).

## 2. <u>The Disability Determination</u>

A claimant is entitled to SSI benefits under the Act if
the claimant is unable to "engage in any substantial gainful
activity by reason of any medically determinable physical or
mental impairment . . . which has lasted or can be expected to
last for a continuous period of not less than twelve months."  42
U.S.C. § 1382c(3)(A).  The impairment must be of such severity
that the claimant

> is not only unable to do his previous work
> but cannot, considering his age, education,
> and work experience, engage in any other kind
> of substantial gainful work which exists in
> the national economy, regardless of whether
> such work exists in the immediate area in
> which he lives, or whether a specific job
> vacancy exists for him, or whether he would
> be hired if he applied for work.

<u>Id.</u> at § 1382c(3)(B).  If a claimant is engaged in substantial
gainful activity, however, he will be found "not disabled

regardless of [his] medical condition or [his] age, education, and work experience." 20 C.F.R. § 416.920(b).

The Commissioner has promulgated regulations establishing a five-step procedure for evaluating disability claims. See 20 C.F.R. §§ 404.1520, 416.920. The Second Circuit has summarized this procedure as follows:

> The first step of this process requires the [Commissioner] to determine whether the claimant is presently employed. If the claimant is not employed, the [Commissioner] then determines whether the claimant has a "severe impairment" that limits [his] capacity to work. If the claimant has such an impairment, the [Commissioner] next considers whether the claimant has an impairment that is listed in Appendix 1 of the regulations. When the claimant has such an impairment, the [Commissioner] will find the claimant disabled. However, if the claimant does not have a listed impairment, the [Commissioner] must determine, under the fourth step, whether the claimant possesses the residual functional capacity to perform [his] past relevant work. Finally, if the claimant is unable to perform [his] past relevant work, the Secretary determines whether the claimant is capable of performing any other work. If the claimant satisfies [his] burden of proving the requirement in the first four steps, the burden then shifts to the [Commissioner] to prove in the fifth step that the claimant is capable of working.

Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (quoting Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996)). The claimant bears the burden of proof with regard to the first four steps; the Commissioner bears the burden of proving the last step. Id.

The Commissioner "must consider" the following in determining a claimant's entitlement to benefits: (1) objective

medical facts and clinical findings; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience.  Id. (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1998)).

### 3.   Duty to Develop the Record

Because a hearing on disability benefits is a non-adversarial proceeding, "the ALJ generally has an affirmative obligation to develop the administrative record." Perez, 77 F. 3d at 47 (citing Echevarria v. Sec'y of Health & Human Servs., 685 F.2d 751, 755 (2d Cir. 1982)).  The ALJ's duty is enhanced when the plaintiff is not represented by counsel, as was the case here.  Williams v. Callahan, 30 F. Supp. 2d 588, 595 (E.D.N.Y. 1998).  This duty arises from the Commissioner's obligation to develop a complete medical record.  20 C.F.R. § 404.1512.  The regulations clarify that "[b]efore we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application . . . [and] will make every reasonable effort to help you get medical reports from your own medical sources."  Id. at § 404.1512(d).  If the information needed is not readily available from the records of the claimant's medical sources, the Commissioner may ask the claimant to attend a consultative examination at the Commissioner's expense.  Id. at § 404.1512(f).  The ALJ thus has a heightened duty to inquire into

and explore relevant facts, particularly when a claimant is proceeding pro se.

**B.    Application**

### 1.    Development of the Record

In this case, the ALJ had Lowe's medical records for the year prior to the date of his application, and going back as far as 1997.  The Commissioner, presumably because there was no evidence from a regular treating physician, requested the consultative examination with Dr. Joseph.  (Tr. 156-59).  The record does contain the medical records from the institutions from which Lowe sought treatment.  At both hearings, Lowe submitted documents, which the ALJ accepted without objection and considered in arriving at his decision.  (Id. at 29, 42).  Lowe agreed at the second hearing on October 2, 2003, that the record was complete and that the ALJ could make his decision based on the record and Lowe's testimony.  (Id. at 42).  The ALJ therefore satisfied his duty to develop the record, and the medical record here was complete.

### 2.    The Sequential Evaluation

In determining the validity of Lowe's claim, the ALJ properly proceeded through the five-step sequential evaluation process outlined in Brown.

### a.  **Present Employment**

The ALJ first determined that Lowe was not then employed, and had not engaged in substantial gainful activity since the alleged onset date.  (Tr. 21, 24).

### b.  **Existence of Severe Impairment**

The ALJ next determined that while Lowe had significant vocational limitations as a result of coronary artery disease status post myocardial infarction, cardiac arrhythmia, and hypertension, these impairments were not severe and did not meet or equal the requirements for impairments listed in 20 C.F.R. § 404, Subp. P, App. 1.  (Id. at 22, 24).  This finding is supported by the medical evidence and Lowe's own testimony.

An impairment or combination of impairments is considered severe if it limits a person's ability to do basic work activities.  20 C.F.R. § 416.921(a).  Basic work activities are "the ability and aptitude necessary to do most jobs," including physical activities such as walking, standing, sitting, and lifting; the capacity to hear, see, and speak; and the ability to understand, carry out, and remember simple instructions.  Id. at § 416.921(b).

Lowe claimed that he was not able to work because of pain and swelling in his legs, difficulty breathing, chest pains, and high blood pressure.  A claimant's testimony about his subjective complaints must be evaluated against the objective medical evidence and other relevant evidence.  20 C.F.R. § 416.929(a) & (c)(4).  The ALJ considered Lowe's subjective

statements concerning the severity of his symptoms and concluded
that Lowe's testimony that he was disabled and unable to work
"was not credible." (Tr. 23). The ALJ based this determination
on Lowe's "medical history, the reports of treating examining and
non-examining doctors, his daily activities, and his demeanor at
the hearings." (<u>Id.</u>).

While the ALJ accepted the majority of Lowe's
testimony, substantial evidence existed to support the ALJ's
finding that Lowe's claims of disability were not credible. (<u>Id.</u>
at 23, 24). According to his testimony, Lowe was able to carry
out a variety of daily activities. (<u>Id.</u> at 35, 48). He used
public transportation to travel to both hearings, and though he
testified that he could only walk two to three blocks, he had
been prescribed a cane for longer walks. (<u>Id.</u> at 30-31, 44, 48).
Lowe also testified that medication controlled his high blood
pressure and, to a lesser extent, his breathing problems. (<u>Id.</u>
at 33-34, 45). He consistently reported that he had no
difficulty sitting and could stand for an hour. (<u>Id.</u> at 36, 50).
When questioned by the ALJ, Lowe agreed that he would be able to
work as a bookkeeper if such a job were available close to his
home. (<u>Id.</u> at 36-37).

The ALJ's findings on Lowe's claims of disability,
based on the objective medical evidence in the record, Lowe's
testimony, and the ALJ's own observations, are therefore
supported by substantial evidence. (<u>Id.</u> at 23-24).[5]

---

[5] The ALJ, having determined that Lowe did not have a
severe impairment and therefore was not disabled within the

-17-

### c.  The Listings

Based on the medical evidence, the ALJ found that
Lowe's impairments did not meet or equal one of the listed
impairments in Appendix 1, and consequently were not impairments
that limited his ability to work.  (Id. at 22, 24).  Dr. Joseph's
examination of Lowe found that he had no restrictions on sitting
or standing, and moderate restrictions on his ability to walk,
lift, carry, push, or pull.  (Id. at 158).  Dr. Ingram's earlier
assessment similarly concluded that Lowe was moderately limited
in his exertional abilities.  (Id. at 162, 166).  Both doctors
also reported that Lowe's hearing, sight, and comprehension were
not impaired.  (Id. at 157, 164-65).  Lowe's high blood pressure
had been controlled by medication since at least October 5, 2001.
(Id. at 45, 143).  His chest was clear with normal S1 and S2
sounds in the examinations in the record.  (Id. at 143, 146, 150,
154, 157).  The cardiac catheterization on February 26, 2001,
revealed normal findings.  (Id. at 176).

### d.  Determination of Residual Functional Capacity to Perform Past Relevant Work

Even though the ALJ had found that Lowe's impairments
were not severe and did not meet or equal the impairments listed
in Appendix 1, the ALJ further considered whether Lowe retained
the residual functional capacity to perform his past relevant
work.  See 20 C.F.R. §§ 404.1520(e), 404.1545.  Residual

meaning of the Act, could have ended the evaluation at that
point.  See 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).
The ALJ, however, went on to consider steps three and four of the
sequential evaluation, and the Court will do the same.

functional capacity is "the most [an individual] can still do considering [physical and mental] limitations." Id. at § 404.1545(a). If an individual can perform his past relevant work, he will not be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

The ALJ found that Lowe had the residual functional capacity for a wide range of light work until one week prior to the hearing, when he began rehabilitation for his hip, and that as of September 24, 2003, Lowe had the residual functional capacity for a full range of sedentary work. (Tr. 24).[6] The ALJ concluded that Lowe's past relevant work as a bookkeeper did not require the performance of work-related activities that his residual functional capacity precluded. (Id.). The ALJ also found that Lowe's medically determinable impairments did not prevent him from performing his past relevant work as a bookkeeper, as that position was actually and typically performed. (Id.).

The residual functional capacity assessment accounted for the effects of Lowe's impairments. The ALJ determined that Lowe could amply allow for his medical impairments by engaging in sedentary work, including bookkeeping, while limiting the weight

_____

[6] Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds . . . . [A] job is in this category when it requires a good deal of walking and standing." 20 C.F.R. § 416.967(b). Sedentary work is defined as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools . . . . Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a).

he lifted as well as his walking and standing.  This reflected the findings of both doctors who considered Lowe's functional capacity and found Lowe capable of the exertional level of sedentary work, as well as Lowe's own testimony.  As noted, Lowe himself agreed that he could perform his past relevant work at the March 6, 2003, hearing.  (Id. at 36).  Because the ALJ found that Lowe had the residual functional capacity to perform sedentary work, and could perform his past relevant work as a bookkeeper, the ALJ concluded that Lowe was not disabled as defined in the Act at any time through the date of the decision. (Id. at 24).

After reviewing the record, I hold that the ALJ properly applied the governing law in determining the denial of SSI benefits.  The ALJ concluded that Lowe retained the functional capacity to perform work available in the national economy based on an examination of the entire record and relevant facts.  Substantial evidence supports the Commissioner's finding that Lowe was capable of performing sedentary work, specifically his past relevant work as a bookkeeper.

## CONCLUSION

For the reasons set forth above, defendant's motion for judgment on the pleadings is granted and the final determination of the Commissioner is affirmed. The complaint is dismissed. The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

Dated:    New York, New York
          July 10, 2006

DENNY CHIN
United States District Judge

-21-